In Special Term, Dec. 1854—GHOLSON, J. presiding.

THE MERCHANTS & MANUFACTURERS INSURANCE Co. OF CINCINNATI
*vs.*
THE WASHINGTON MUTUAL INSURANCE Co. OF CINCINNATI.

Where plaintiffs effected an insurance upon their stock of "flour, grain, and cooperage contained in their stone and brick steam flouring mill, with a cement roof, known as the City Mills, detached from all other buildings," and it was agreed that "*thereafter*" none of the following trades should be carried on therein, viz.: grist, saw, paper, and other mills, manufactories or mechanical operations requiring *fire-heat*, or in which wood chips or shavings are made;" the plea alleged that the plaintiffs at the time and before the destruction of the said stock &c. carried on in the said mills the business of "kiln drying corn meal," which required *fire-heat*. Replication averred, that kiln drying corn meal was an incident to a "steam flouring mill." On demurrer to this replication, held, that the replication was a good answer to the plea.

That if "kiln drying corn meal" was not an incident to a steam flouring mill, a proper appliance or means in carrying on the business, the mere fact that it was in existence, and in operation in some part of the mill, at the time the policy was obtained, formed no grounds for its continuance afterwards; the connection with a steam flouring mill, being, in that case, in respect of location, and not in the nature of the operation.

Assuming the risk of a steam flouring mill, involves the assumption of those things fairly and properly connected with such a business, as part of and appertaining to it, whether newly introduced, or used before the insurance was effected, or not.

This was an action of covenant on a policy of insurance, by which, on the 26th day of October 1847, the defendants insured the plaintiffs, "against loss or damage by fire, to the amount of Four Thousand Dollars on $8000, as insured by them to D. White & Co. on stock of flour, grain, and cooperage, contained in their stone and brick steam flouring mill with cement roof, and detached from all other buildings, situated in the city of Madison, Ind. and known as the City Mills." It was agreed, "that in case the above mentioned building *should thereafter* be appropriated, applied, or used to or for the purpose of carrying on or exercising therein any trade, business, or vocation, denominated 'hazardous,' in the conditions an-

nexed to this policy, or for the purpose of storing therein any of the articles, goods, or merchandise, in the conditions aforesaid, denominated hazardous, unless herein otherwise specially provided for, or hereafter agreed to by said company, (i. e. the defendants), and endorsed upon this policy, then, and from thenceforth, so long as the same shall be so appropriated, applied, or used, these presents shall cease, and be of no force, or effect." Among the trades, &c. denominated hazardous, in the conditions annexed to the policy, are, " grist mills, fulling mills, saw mills, paper mills, and other mills, manufactories, or mechanical operations, requiring fire-heat, or in which wood chips or shavings are made."

Among other matters the defendants plead as a defence to the action, " that after the making of said policy and at the time of said loss by fire, and on divers days before that time, without any special provision therefor in said policy, or any agreement therefor by the defendants, endorsed on said policy, the said building was used by the said D. White & Co. for the purpose of carrying on the business of kiln drying corn meal, which is a mechanical operation requiring fire-heat."

To the above plea the plaintiffs filed three replications. The first replication takes issue with the averments in the plea, and that issue stands for trial. The second replication, (which is an amended one, a demurrer having been sustained to the one first filed,) states, "that at the time of the making said policy and before then, and at the time of said loss, said building was a steam flouring mill, having as a part of the machinery thereof, the apparatus for kiln drying corn meal, and the business of kiln drying corn meal, as carried on therein,

was then and there an incident to the business of steam flouring mills." The third replication states, " that at, and before, the time of the making of said policy, and at the time of said loss, the said building described in said policy, was a large stone and brick building, situated in the city of Madison, Indiana, having all the machinery necessary for grinding wheat, corn, and other grains, kiln drying corn meal, and bolting flour of various kinds, constituting a steam flouring mill, and its machinery had been used for said purposes; and at the time of the making of said policy, and before then, and from thence to and at the time of said loss, said building, with said machinery, was known as the City Mills, and the plaintiff avers that the business of kiln drying corn meal, as carried on in said building, was, at the said several times aforesaid, and before then had been, a part of the regular business and use of said City Mills, and of the machinery thereof."

GHOLSON, J.

The plea, which both replications purport to answer, is founded on the clause of the policy which has been quoted, prohibiting, in connection with the condition to which it refers, the use of the building for any mechanical operation requiring fire-heat. The plea avers, that " kiln drying corn meal," is such an operation, and the building being used for that business at the time of the loss by fire, there can be no recovery for such a loss under the policy. The 2d replication seeks to avoid this conclusion, by showing, that, as the building described in the policy, was a "steam flouring mill," its use as such must have been intended, though all mills are prohibited as hazardous by the clause in and condition annexed to the policy,

on which the plea is founded, and that "kiln drying corn meal" is *incident* to the use of "*steam flouring mills*." If I properly understand the replication, it claims that the apparatus for kiln drying corn meal was a part of the machinery of the mill, and appertained to, or was a proper appliance or means in the carrying on of the business of steam flouring mills. If this replication be so understood, and that it may be so understood is sufficient, I think it is a good answer to the plea, and that a general demurrer to it must be overruled.

To the 3d replication there is a general demurrer; and this replication, though setting out the same general facts which are stated in the 2d replication, is essentially different. In the one, "kiln drying corn meal" is defended, on the ground that it is an incident to the business of "steam flouring mills;" in the other, on the ground, that it is a part of the regular business of the establishment, described in the policy as the "City Mills."

If the carrying on the business of "kiln drying corn meal" is protected, from its usual and proper connection with the business of a steam flouring mill, that defence is fully made in the second replication. The 3d replication can only be maintained on the hypothesis, that any independent business, in point of fact, carried on in the building, at the time of the insurance, might still be carried on, nothwithstanding the clause in the policy and the conditions annexed; or, on the ground, that as the business of a steam flouring mill is authorized, any appliance in aid of that business, or which may, in any manner, facilitate the carrying it on, though it may be only used in the particular mill, and before such use have been unknown, and although it requires fire-heat, is also authorized.

The first proposition certainly cannot be sustained. If a powder mill or steam cotton manufactory had been in operation in some part of the building described as the City Mills, unless the use of such a mill or manufactory had been discontinued, there could be no recovery under the policy. If, then, the business of "kiln drying corn meal" can be protected, it must be from a connection with the steam flouring mill in respect of the nature of the operation, and not from the point or place of its location. If it be an independent business requiring fire heat, it is prohibited by the policy. The warranty contained in the policy upon this point is prospective; it provides for what may exist, and the existence of the thing prohibited at the date of the policy, is no excuse for its subsequent continuance.

The second proposition involves more difficulty. It must be considered that the business of a steam flouring mill is authorized, and as I have already decided that business may be conducted in the manner and with the appliances usual and proper to "steam flouring mills." That "kiln drying corn meal" is one of those appliances, is the question raised by the second replication. But suppose that "kiln drying corn meal" as an aid, appliance, or means in the business of a steam flouring mill had never been tested, but should be considered a new and valuable improvement in the mode or manner of carrying on that business, would the clause in the policy prohibit its introduction? The list of hazardous trades mentioned in the second of the conditions annexed to the policy, embraces nearly every description of manufactories; and probably all in which steam power is used. I am not prepared to say, that it was the meaning of that condition to prevent

24

the introduction and trial of the various improvements which ingenuity is constantly devising, though their operation might require the use of fire heat. I rather think, that the framers of the policy supposed that any material change or modification of a steam manufactory in respect of the use of fire, would necessarily involve such an alteration of the structure or premises insured, as to be embraced by the clause in the policy prohibiting such alteration, that when one of the hazardous risks is assumed, *e. g.* a "steam flouring mill," every thing fairly and properly connected with such a business, as part of it and appertaining to it, whether newly introduced or before used, must be considered as authorized; that the "other mechanical operations requiring fire heat," are those having no proper connection with the operation of a "steam flouring mill."

In this view, if the averments of the replication are to be understood, as stating, that the building with its machinery, including that for kiln drying corn meal, constitutes a "steam flouring mill," and that the "kiln drying corn meal" is a part of the operation or business of a "steam flouring mill," I should be prepared to sustain it as a sufficient answer to the plea. The point to which I shall require the replication to come up, is, that the business of "kiln drying corn meal" being connected with that of a "steam flouring mill," the authority to carry on the one embraces the other. Such a ground may probably be taken under the first replication or the general denial of the plea: but I see no objection to its being taken specially. The third replication does not, however, in my opinion, though it may have been so intended, stand with sufficient clearness on that ground. If it was so intended,

by one or two slight verbal alterations it may be made to conform to what is required. If it was not so intended, then the replication is, what may be fairly inferred from the language, a statement, that the business of kiln drying corn meal, though not properly connected with the business of a "steam flouring mill," was a part of the regular business of the establishment known as the "City Mills," the connection with a steam flouring mill being in respect of location and not in the nature of the operation. Thus understood, the replication cannot, in my opinion, be deemed sufficient, and the demurrer to it must be sustained.

In the briefs which have been submitted to me by the counsel, I find some elaborate and able arguments on the question of representation, but I do not see that any question on that point now arises. I may, however, very properly make one remark, having a connection with a question of concealment, which has influenced my mind in allowing the 3rd replication to stand, if amended as I have required. I suppose that the introduction of any new mode of carrying on or of aiding in the carrying on the manufactory, which would materially increase the risk by use of fire heat, would generally involve such an alteration of the premises as to be precluded by the clause in the policy on that subject; and I have assigned this as a reason, why the prospective warranty against other mechanical operations extends only to those of an independent character. It may be said that in such a case as the present—the novel and extraordinary apparatus—if it be such—being in use and attached when the policy was made, would not be embraced in the clause providing against a material alteration of the premises insured. This may be true—but still the insurer would probably be protected

against any extraordinary or unusual mode of carrying on the business—one which he would have no just reason to expect, and which materially increased the risk, by the obligation resting in such a case on the insured to make a communication on the subject. Such I believe is the rule on the subject laid down in the recent case of Clark *v.* Manufacturer's Insurance Co. 8 *Howard,* 235–249.

COFFIN & MITCHELL for plaintiff.

TAFT, KEY, & MALLON for defendants.