NATHANIEL SMITH and another, Executors, &c., of JONATHAN SMITH, Appellants, v. THE MECHANICS' AND TRADERS' FIRE INSURANCE COMPANY, Respondents.

Where the policy of insurance describes the property insured as being "a two-story framed building used for winding and coloring yarn, and for the storage of spun yarn," it does not thereby warrant that such building is to continue to be thus used.

Such statement in the policy is a warrant as to the use *in presenti* only, and is not to be deemed a continuing warranty as to the future use of such building.

The insurer wishing to protect himself by a continuing warranty, as to the future use of such building, must do so by language plainly importing such intent.

Where, on account of the character of the use of the property insured, special rates are required to be paid, and the policy contains no warranty of continued use, a change of such use, keeping within the same character of risk, calling for the same special rates, will not avoid the policy where the risk is not thereby increased.

In such case, it is for the jury to find the fact whether the risk has been increased by such change.

Evidence on the part of the insured, tending to show that by such change the risk was greatly decreased, is competent.

DAVIS, J.  This action is brought on a policy of insurance of $2,500, issued by defendants to Alexander Smith, and by him duly assigned to plaintiffs. The policy was upon one of several buildings adjoining or contiguous, and constituting an establishment known as "Smith's Carpet Factory." The risk came under the class of special hazards, and the premium was at the rates charged for that class. The property insured is described in the policy in these words: "$400 on his two-story framed building used for winding and coloring yarn and for storage of spun yarn, situate at West Farms, Westchester county, New York, known as part of Smith's Carpet Factory, marked F on plan of premises filed in the office of the Brooklyn Fire Insurance Company; $1,600 on stock wrought and unwrought and in process of being wrought in the above building; $500 on machinery and fixtures in said building."

The policy also contained a clause in these words: "And it is agreed and declared to be the true intent and meaning

of the parties hereto, that in case the above mentioned premises shall, at any time after the making and during the time this policy would otherwise be in force, be appropriated, applied or used to, or for the purpose of, carrying on or exercising therein any trade, business or vocation denominated hazardous, or extra hazardous, or specified in the memorandum of special rates in the terms and conditions annexed to this policy, or for the purpose either of depositing, storing or keeping therein any of the articles, goods or merchandise in the same terms or conditions denominated hazardous, or extra hazardous, or included in the memorandum of special rates, except as herein expressly provided for, or hereafter agreed to by this corporation, in writing, to be added to, or indorsed upon, this policy, then and from thenceforth so long as the same shall be so appropriated, applied or used, these presents shall cease and be of no force or effect."

Among the subjects enumerated in the memorandum of special rates contained in the conditions annexed to said policy are " wool mills, wheelwrights and wool waste, and generally all mills and manufacturing establishments requiring the use of fire heat not before enumerated."

In October, 1861, the manufacture of carpets having been temporarily suspended under the pressure of the times, the insured placed in the building covered by the policy in suit, thirteen hand looms for weaving woolen army blankets, which looms were in part made from materials before used in manufacturing carpets, and partly from new materials. On the 1st of November, 1861, defendant, for an additional premium at an enhanced rate, consented that building " C," one of the several constituting the carpet factory, be occupied for weaving, *fulling* and storage purposes, and gave privilege " to run the mill nights for the term of three months."

After this period the insured commenced weaving army blankets by hand power in the building insured by defendants, and continued that business until the whole establishment was destroyed by a fire, which occurred in January, 1862, and originated in another building. There was no evidence that the change in the use of the building increased

the risk, and plaintiffs offered to show that the risk was, in fact, decreased, but the evidence offered was excluded. It was proved that the process of "*fulling*" was never used in the manufacturing of carpets, but was a necessary part of the manufacture of blankets; and that it was not customary for carpet factories to be run nights. On the trial the plaintiffs were nonsuited, and judgment entered thereon was affirmed at General Term.

The statement of the policy that the building insured was "used for winding and coloring yarn, and for storage of spun yarn," was undoubtedly a warranty of its then present use. (*Jenkins* v. *Chenango Mutual Ins. Co.*, 2 Denio, 75; *Wall* v. *The East River Ins. Co.*, 3 Seld., 370.) This is all that is settled by the above cases. But there is no pretense that the building in this case was not used at the time of the insurance precisely as stated, and, therefore, none for saying that the warranty was broken *in presenti*, as it was in the cases cited. The only question, therefore, on this part of the policy, is, whether it contains a warranty that the building, during the continuance of the policy, should be used only " for winding, coloring and storing yarn, with the fixtures and machinery then in it. In *O'Niel* v. *The Buffalo Ins. Co.*, the premises were described as occupied by a certain individual as a private dwelling. The occupant moved from and ceased to occupy the house several weeks before the fire, and it stood vacant when burned. This court held that the description in the policy must be regarded as a warranty of the fact that the person named was the occupant at the date of the policy, and nothing more. (3 Comstock, 122.) In *Catlin* v. *The Springfield Ins. Co.* (1 Sum., 435), the policy was on a dwelling house, " at present occupied by one Joel Rogers as a dwelling house, but to be occupied hereafter as a tavern, and privileged as such," it was held that there was no continuing warranty that the house should be occupied as a tavern or otherwise, and that the company were liable, although the building was destroyed while vacant, by foul means, which probably could not have occurred if it had been occupied. A

distinction was made in the court below between the use of the word " occupied," and the word " used," in the description of policy as to the effect upon the question of continuing warranty; but to my mind the suggestion is without force. Both relate to the present actual use of the property, and are, when so applied, synonymous in intent and meaning. If the courts do not find a warranty in the phrase *occupied* in a particular manner, it would be overstraining to find one in the words, *used* in a specified way. If an insurance company desire to protect itself by a warranty as to future or continued use in the same manner as when insured, it may always do so by language, the object and meaning of which will be understood by both parties, and the courts should not thus construe words which are fully satisfied as a description of a present use or condition, into a promissory warranty, unless the inference is natural and irresistible that such was the understanding and design of both parties. Where there is such a warranty as to future use, the designated use must continue, or the warranty will be broken, for courts have no right to say that the insured may abandon the particular use or occupancy, and allow the premises to lie vacant or idle; for the very act of requiring such a warranty is conclusive that the insurer considered the continuance of the designated use or occupancy material to the risk, and made the contract accordingly. In my opinion there was no continuing warranty of future use in the clause of the policy under consideration.

The view that the description was not designed as such continuing warranty, is strengthened by the fact that the company have retained in the policy the clause in regard to using or appropriating the property in any manner included in their tabular statement of hazardous, extra hazardous and special rates; and thus, by force of the well known maxim " *expressio unius est exclusio alterius*," assented to changes not within the prohibition.

Another question of the case is, whether the change of use of the building from the purposes named in the descrip-

tion to the use of the hand looms for weaving blankets, falls within the prohibition just referred to. In considering this question, it is to be remembered that the property was insured as part of a manufactory of woolen fabrics — carpets made of wool — and is therefore properly within the designation " wool mills," as used in the list of special rates. Indeed, the factory is described by defendants as " the mill " in the privilege given for running nights. It was insured at the special rates fixed by the company because of the kind of business carried on. In making the change, no new or additional business was superadded to that of manufacturing carpets. The latter was temporarily abandoned and the making of blankets temporarily substituted. The same material was used, prepared substantially in the same manner, but brought to a differently constructed loom for the purpose of turning out a different fabric. But there was no change of the premises or of the business from something not " hazardous or extra hazardous," or not specified in the memorandum of special rates, to something coming within either. The wool mills remained wool mills, although they made blankets instead of carpets for the time being, and never by the change lost their character as a manufactory of woolen goods in which they were insured. In no just sense of the prohibitory clause above quoted, was there any change obnoxious to its provisions; for an establishment within the special rates, because it manufactured woolen goods of one kind, was no more within them because it made the same material into a different kind of goods. In my judgment, the policy was not forfeited by force of the clause relied upon by substituting the making of blankets for carpets in the manner described in the evidence, because it was no such change or different " appropriation " as is contemplated by that clause.

The question is, therefore, the same precisely as though the insured, instead of setting up hand looms for weaving blankets in the building named by defendants, had put there the same number of looms for weaving carpets. And as there was no continuing warranty that the particular use

of the building stated in the policy should be continued while the policy run, the case ought to have gone to the jury on the question whether the risk was materially increased by the conduct of the assured without the consent of the company. The evidence which was offered to show that the change, in fact, diminished, instead of increasing the risk, should have been allowed upon this question.

I have not considered the force to be given (if any) to the consent of the company, that one of the buildings, constituting a part of the manufacturing establishment, might be used for a process wholly unknown in carpet making, but requisite to the manufacture of most other woolen goods, as implying that such goods might be made in the establishment as required that process. It is not necessary to the determination of this case, in its present aspect, that anything farther should be done than to settle the construction of the clauses of the policy above considered.

I think the judgment should be reversed, and a new trial ordered.

WRIGHT read opinion for affirmance. DAVIES and CAMPBELL concurred.