THE UNITED STATES FIRE AND MARINE INSUR-
ANCE COMPANY, of Baltimore, *vs.* WILLIAM H.
KIMBERLY and EDWARD KIMBERLY.

*Construction of a Policy of Insurance — When the
description of the Property a Warranty and when
not.*

The U. S. Fire Insurance Co. issued a policy to K, which contained
the following description in writing, of the property insured, "On the
four-story brick warehouse situate on Wide Water st , Norfolk, Va.
First floor occupied by machinery used for making barrels, with privi-
lege of storing barrels on the premises, and other merchandize not more
hazardous. Steam boiler encased in brick about ten feet from building."
The policy also contained the following clauses: "In all applications for
insurance of property, the applicant must furnish an accurate and just de-
scription of the same, *viz:* of what materials each building is constructed;
whether occupied as a private dwelling or how otherwise, &c., * * *
whether any manufactory is carried on in the premises. * * * And
if any person or persons shall insure his or their building or goods, and
shall cause them to be described in the policy otherwise than they really
are, so that the same be charged at a lower premium than would other-
wise be demanded; or if such description be false or fraudulent, such in-
surance shall be void and of none effect; " and " It is agreed and de-
clared to be the true intent and meaning of the parties hereto, and of
these presents, that in case the above-mentioned premises shall, at any
time after the making and during the time this policy would otherwise
continue in force, be appropriated or used for the purpose of carrying on
or exercising the trade of soap-boiler, * * * cooper, carpenter, cabi-
net-maker, * * * or any manufactory which requires the use of fire
heat; or shall be used for the purpose of storing therein gunpowder,
* * * or other hazardous goods, * * * then and from thence-
forth, so long as the said premises shall be wholly, or in part, appropri-
ated or used for any or either of the purposes aforesaid, these premises
shall cease and be of no force or effect, unless otherwise specially agreed
to by this corporation, and such agreement be signed in writing in or on
the policy." At the time the policy was issued, the premises were used
for no other purpose than those described in the written part. Subse-
quently small circular saws and a work bench were introduced in the
second story for making boxes. But no boxes had been made for seve-
ral months prior to the fire, although it was the intention to resume the
manufacture. The saws and bench were accordingly left; and a lathe

U. S. Fire and Mar. Ins. Co. of Balt. *vs.* Kimberly.

had been put up on the day before the fire for the purpose of making broom handles and brush blocks, but had never been used. A loss having occurred by fire, the assured brought suit on the policy. HELD:

1st. That the written part of the policy was a description, or warranty *in præsenti*, and not a continuing warranty.

2d. That the introduction of the manufacture of boxes on the premises, did not finally avoid the policy, but suspended its force and effect during the continuance of the manufacture.

3d. That the use and appropriation of the building at the time of the fire were not such as to prevent a recovery on the policy.

Courts are not disposed to favor a warranty by construction, and if the terms used are fully satisfied as a description, they will not be extended to include a warranty, unless it is clearly expressed that such was the design and meaning of the parties

APPEAL from the Superior Court of Baltimore City.

This was an action brought by the appellees to recover upon a policy of insurance issued by the appellant. The facts of the case are sufficiently set out in the opinion of the Court. The verdict and judgment were for the plaintiffs and the defendant appealed.

The cause was argued before BRENT, MAULSBY, MILLER, ALVEY and ROBINSON, J.

*I. Nevett Steele,* for the appellant.

If the following language in the written portion of the policy, viz: "*on a four-story warehouse. First floor occupied by machinery used for making barrels, with privilege of storing barrels on the premises,*" &c., constitutes an agreement between the parties, not looking merely to the inception of the policy, but continuing during the period which the insurance covers, it would seem to be clear that the establishment of a box manufactory, with its saws and carpenter's bench on the second floor, and the manufacture of large quantities of boxes and brush blocks, was a clear and substantial violation of the

contract. The first question, then, which the case presents is, what is the true meaning of this clause in the policy. This Court has recently decided, in the case of the *Washington Ins. Co. vs. Kelly*, 32 *Md.*, 421, that a policy of insurance is not in its construction to be taken most strongly against the insurer, but is to be construed, like other contracts, with a view to the ascertainment of the true meaning and intention of the parties.

Could it have been the intention of the parties here, that this clause should be regarded as mere description, and that the insured should be at liberty, the moment after the policy was signed, to introduce machinery on all the floors of the warehouse, for any manufacturing purposes he might think proper? The mode and the extent in and to which the warehouse should be occupied by machinery for such purposes, were *material to the risk*, and therefore the representation on that subject was a continuing representation, which by its incorporation in the policy became a warranty. *Mead vs. Ins. Co.*, 3 *Selden*, 530; *Lee vs. Ins. Co.*, 3 *Gray*, 583; *Wood vs. Hartford Ins. Co.*, 13 *Conn.*, 533–544; *Stetson vs. Mass. Ins. Co.*, 4 *Mass.*, 337; *Jennings vs. Chenango Mutual Ins. Co.*, 2 *Denio*, 75; *Murdock vs. Chenango Mutual Ins. Co.*, 2 *Comstock*, 210; 1 *Phillips on Ins.*, sec. 866; *Sillem. vs. Thornton*, 3 *Ell. & Black.*, 868, *in* 77 *E. C. L. Rep.*

If the manufacture of boxes falls within the trade or business of a carpenter, as was held by the Court below, and the written clause of the policy is to be construed in connection with the printed stipulation in reference to that trade, the question then presents itself, what is the true construction of the words "appropriated or used," as found in that stipulation? If machinery, &c., were placed on the second floor for making boxes, and used for that purpose from time to time, as suited the convenience of the manufacturer, then there was an appropriation of part of the building for the purpose of such manufacture; and so long as the machinery, &c., remained there, with the intention on the part of the manufacturer so to use it from time to time, such appropriation of the

building continued. It would be a very narrow construction to hold that the machinery must be in actual use at the moment of the fire, in order to give the insurer the benefit of this stipulation. Such a construction, instead of giving meaning to all the words used by the parties, would throw out the word "appropriated," and give effect only to the word "used." If the use of the machinery had been finally and permanently abandoned, a different case would have been presented, but the proposition involved in the prayers of the appellant presents the case, not of such an abandonment, but of machinery set up and kept up, and used and to be used from time to time, as the ordinary course of business in that manufacture required.

It will not be questioned that the insured is responsible for the acts of his tenant in this matter. *Howell's Ex'rs vs. Balt. Eq. So.,* 16 *Md.,* 386, 387 ; *Clarke vs. Man. Ins. Co.,* 2 *Wood. & Min.,* 472, 489, 494.

*Henry E. Kennard* and *S. Teackle Wallis,* for the appellees.

Even if the written clause in the policy had stood disconnected from the printed provisions above, it would have imported no warranty that the premises should not be put, during the running of the insurance, to any other uses than those indicated by its language. If the proposition of the appellants' counsel to the contrary were true, then there was an obligation on the appellees not only not to apply the premises to other purposes, but not to abandon their use for the named purposes. The failure to continue the warranted uses, would have been as much a breach of the warranty as the substitution of other and different uses, even although such cessation had greatly diminished instead of increasing the risk.

The clause in question is really nothing more than a description of the existing employment of the premises, coupled with a permission, as to their future use in the way of storage. So far as the permission is concerned, that of course imports no

warranty, as 'this Court has expressly decided. *Md. Fire Ins. Co. vs. Whiteford*, 31 *Md.*, 221.

So far as the description goes, it imposed no obligation but that of truthfulness and good faith. It was a statement of the then character and occupation of the premises, as required by the printed conditions of the policy, and there is no pretence that it was not a true statement. *New England Fire & M. Ins. Co. vs. Wetmore*, 32 *Ill.*, 221, 243, 245 ; *Smith vs. Merch. & Traders' Ins. Co.*, 32 *N. Y.*, 402 ; *O'Neill vs. Buffalo Fire Ins. Co.*, 3 *Comst.*, 124 ; *Blood vs. How. F. Ins. Co.*, 12 *Cush.*, 472 ; *Cuttin vs. Springfield F. Ins. Co.*, 1 *Sumn.*, 442 ; *Lounsbury vs. Protective Ins. Co.*, 8 *Conn.*, 467 ; *Pim vs. Reid*, 46 *E. C. L.*, 1 ; *Budd vs. Fairmaner*, 21 *E. C. L.*, 218 ; *Leggett vs. Ætna Ins. Co.*, 10 *Richardson* (*Law*,) 202 ; *Smith vs. Merchants' Ins. Co.*, 29 *Howard*, (*N. Y.*,) 384 ; *Lycoming Ins. Co. vs. Mitchell*, 48 *Pa.*, 372 ; *Stokes vs. Cox*, 1 *Hurls. & Nor.*, 320, 533.

But the written clause does not stand alone. It is to be read with and interpreted by the printed clause in regard to increase of risk, which follows it in the body of the policy, and even if it were a warranty, its meaning and effect would be governed and limited by that clause. The printed clause enumerates certain employments and uses of the most hazardous character, and then provides that if the premises shall be diverted to any such, during the running of the policy, and without the consent of the underwriters, the policy shall cease and be of no effect, "so long as the said premises shall be wholly or in part appropriated or used for any or either of the purposes aforesaid." *Budd vs. Fairmaner*, 21 *Eng. C. L.*, 218 ; *Blood vs. How. Fire Ins. Co.*, 12 *Cush.*, 472 ; *Stokes vs. Cox*, 1 *Hurls. & Nor.*, 320, 533.

Apart from this clause, the effect of diverting the premises to any of the more hazardous uses enumerated, would have been to deprive the insured of the right to recover, only in case the loss was produced in whole or in part by such dedication. *Jolly vs. Equitable Ins. Co.*, 1 *H. & G.*, 295 ; *Allen*

*vs. Mutual Ins. Co.* 2 *Md.,* 128 ; *Washington Fire Ins. Co. vs. Davidson, &c.,* 30 *Md.,* 102.

Under the clause, the underwriters were released by the mere application of the premises to the more hazardous uses, without regard to the non-connection of the latter with the loss, provided the loss should occur during such application. The underwriters thus relieved themselves from the necessity of proving that the increased risk contributed to the loss, if they could show that the fire happened pending such risk. This was what they gained by the introduction of the printed clause, and nothing more.

The policy is to be taken altogether, and it imports that if the premises should be used for or appropriated to any more hazardous employment than that described in writing, and a loss should happen, pending such employment, the insured could not recover at all, if the employment was one of those excepted, and if it was not, they could not recover, unless the occupation contributed to the loss. The right to increase the risk was given, subject only to the penalty of having the policy suspended meanwhile.

Use and appropriation, in the printed clause referred to, mean actual present use or appropriation—such as expose the premises to the increased risk provided against. The clause looks to and allows a more hazardous use with a suspension of the policy pending such use. It does not contemplate a forfeiture. When the use ceases actually, so that the risk ceases, the suspension of the insurance ceases and the assured recovers his rights under the policy. *Md. Ins. Co. vs. White-ford,* 31 *Md.,* 228.

BRENT, J., delivered the opinion of the Court.

This action is brought upon a policy of insurance, issued on the 28th of March, 1867, by the United States Fire and Marine Insurance Company of Baltimore, to Kimberly Bros., by which the company agreed to insure them against loss and damage, to the amount of eight thousand dollars, " *on the*

230          MARYLAND REPORTS.

*four-story brick warehouse, situate on Wide Water street, near Church street, Norfolk, Va. First floor occupied by machinery, used for making barrels, with privilege of storing barrels on the premises, and other merchandise not more hazardous. Steamboiler encased in brick about ten feet from building."* This portion of the policy was written, and upon it arises the principal question presented by this appeal.

The policy also contains the following clause: "In all applications for insurance of property, the applicant must furnish an accurate and just description of the same, viz: of what materials each building is constructed; whether occupied as a private dwelling *or how otherwise;* where situated; the name of the present occupier; how situated with respect o other buildings. And in the insurance of goods, wares and merchandise, the place where the same are deposited to be described; also, a general description of such goods, and whether any manufactory is carried on in the premises; all of which is to be certified and attested in such manner as the nature of the case may admit. And if any person or persons shall insure his or their building or goods, and shall cause them to be described in the policy otherwise than they really are, so that the same be charged at a lower premium than would otherwise be demanded; or if such description be false or fraudulent, such insurance shall be void and of none effect."

The premises had been leased on the 1st of February, 1867, for two years, to the firm of Baird & Roper, and at the time of issuing the policy, were used for no other purpose than those described in the written part of it. Subsequently, small circular saws and a work bench were introduced in the second story for the purpose of making boxes, and had been used for that purpose in the season, which was spring, summer and early fall; but this description of work had ceased, and no boxes had been made for from two to four months before the fire. The circular saws and work-bench were left, however, in the building, and evidence was offered, tending to show

that the work was to be resumed at a future time. A lathe had also been put up, the day preceding the night of the fire, for the purpose of making broom-handles and brush-blocks, but had never been used.

The appellants insist, that the written portion of the policy is a continuing warranty, and that it was broken by the introduction of the manufacture of boxes upon the premses, during the running of the insurance.

There can be no doubt, from the apparent conflict of the authorities which have been cited, that it is sometimes very difficult to determine whether the stipulations in a policy are descriptive only, or are intended by the parties, that the premises should continue to be used in the manner designated and in no other. But in the present case, we think the intention is very clear, and that the written portion of this policy is nothing more than a warranty *in præsenti*. The second clause of the policy, which we have quoted, requires the applicant for insurance to describe with accuracy the building to be insured—*how occupied*, the materials of which it is constructed, and where and how situated with respect to other buildings. If the description is untrue, so that a lower premium is charged than would otherwise be demanded, the policy is thereby rendered void. The use, to which this building was appropriated, that of manufacturing barrels, is among those excepted in the printed portion of the policy, and its statement was an essential part of the description to enable the insurers to fix the amount of premium to be paid for the risk. Had it been omitted, the description would have been imperfect; and as that use was continued up to the time the fire occurred, no recovery for the loss could have been had upon the policy. The clause certainly requires a true and accurate description of the use and occupation of the property under the penalty of forfeiture, and if such description is not in the written portion, it is no where to be found in any other part of the policy. Courts are not disposed to favor a warranty by construction, and if the terms used are fully satisfied

232    MARYLAND REPORTS.

U. S. Fire and Mar Ins. Co of Balt. vs. Kimberly.

as a description, they will not be extended to include a warranty, unless it is clearly expressed that such was the design and meaning of the parties. These views are sustained by authorities entitled to great consideration. In the case of Blood vs. Howard Fire Ins. Co., 12 Cushing, 472, the policy being upon a building "of wood, two stories high, formerly used as a machine shop, all of which business is now stopped and shop fastened up, and only used for the purpose of the meeting of the band, during two evenings of the week, on the second floor," it was held to be a description of the building, and not a warranty of its future use or occupation. In the case of Smith vs. Mechanics & Traders' Ins. Co., 32 N.Y., 399, the policy was upon a "two-story framed building, used for winding and coloring yarn, and for storage of spun yarn, with the machinery and fixtures in it," it was held, as the terms of the clause were fully satisfied as a description, they would not be construed to be a continuing warranty of future use. To the same effect are the cases of O'Neil vs. Buffalo Fire Ins. Co., 3 Comst., 122; Billings vs. Tolland County Mutual Fire Ins. Co., 20 Conn., 139; Catlin vs. Springfield Ins. Co., 1 Sum., 435, and Joyce vs. Maine Ins. Co., 45 Maine, 168. The cases in 2 Denio, 75, and 3 Seld., 370, relied upon by the appellant in this case, are referred to by the Court in their opinion, in 32 New York, 399, and held not to be in conflict with the decision in that case.

There is another clause in the policy before us, which furnishes very conclusive proof, that the parties never understood or designed the written portion in question to be anything more than a warranty of present use. In that clause "it is agreed and declared to be the true intent and meaning of the parties hereto, and of these presents, that in case the above mentioned premises shall, at any time after the making and during the time this policy would otherwise continue in force, be appropriated or used for the purpose of carrying on or exercising the trade, business or vocation of soap-boiler, tallow-chandler, brewer, maister, baker, rope-maker, sugar-re-

finer, distiller, chemist, varnish-maker, paper-maker, stable-keeper, tavern-keeper, china, glass or earthenware seller, oil and colorman, printer, bookbinder, *cooper, carpenter,* cabinet-maker, coach-maker, boat-builder, ship-chandler or apothecary, or any manufactory which requires the use of fire-heat, or shall be used for the purpose of storing therein gunpowder, hemp, flax, oils, pitch, tar, rosin, turpentine, spirits of turpentine, aqua fortis, straw, hay, grain unthrashed, fodder, distilled spirits, or other hazardous goods, for theatrical or other public exhibitions, steam-engine used or undergoing repairs, then and from thenceforth, *so long as the said premises shall be wholly or in part appropriated or used for any or either of the purposes aforesaid, these premises shall cease and be of no force or effect,* unless otherwise specially agreed by this corporation, and such agreement be signed in writing in or on the policy." If the parties understood that the terms of the policy had already warranted against other use of the property insured, it is not perceived why this special agreement should have been entered into. There was substantially a similar clause in the policy in the case in 12 *Cushing,* 474, already referred to. The Court says in regard to it, "this leaves no room for doubt that the sole object of the warranty in question was to ascertain the precise nature and condition of the property at the time the risk was proposed to the defendants in the application of the plaintiff, and enable them to judge of its extent and character, and the rate of premium at which they would insure it. But it is clear that they did not rely upon it as an executory stipulation, by which the plaintiff was to be bound after the contract was entered into. To guard against any increase of risk which might arise in the structure or use of the property, they relied upon a special agreement, designed for that purpose only. If they relied on the warranty, such an agreement was superfluous and useless." This reasoning applies with equal force to the case before us. But further, the two clauses are inconsistent, if the first is to be taken as a warranty of future use, for the second does not avoid the

policy absolutely by the use or occupation of the premises by any of the prohibited trades, but only suspends it during such use or occupation. They .cannot both stand together with the interpretation contended for by the appellant. The only manner in which they can be recited, is by construing the first to be a present warranty of the condition of the property at the time of the application for insurance, and the second as the sole special agreement between the parties in reference to its future use. And this construction, giving efficacy to each part of the policy, we think is the correct one.

There is no doubt, that under the stipulations of the policy the insured could not have recovered, if the premises had been appropriated or used at the time of the fire, in the manufacture of boxes, as that occupation is embraced in the terms "trade, business or vocation of a carpenter." The parties, however have contracted that such prohibited use destroys or suspends the force and effect of the policy only *so long* as the premises shall be *appropriated or used* for any of the prohibited purposes. The plain meaning of the language employed is, not that the policy is rendered void to all intents and purposes by such prohibited use or occupation, but that it is to have no force or effect only during the time the premises are so used. Or in other words that it is then suspended. When therefore the use ceases to exist, the policy is again in full force, and the insured restored to all his rights under it. *New England Fire & Mar. Ins. Co.*, 32 *Ill.*, 221.

But it has been argued that the building in question was in fact *appropriated* at the time of fire to a prohibited use, inasmuch as the saws and work-bench, which had been used for the manufacture of boxes, still remained in the building to be again used for that purpose. This is not such an appropriation as is contemplated by the policy. The thing guarded against by its stipulations is increased risk, and this would be occasioned only by a present use and occupation of the building in carrying on and conducting the prohibited manufacture. So soon as there was a suspension or abandonment of

it, as there had been in this case for some months, the risk ceased. We do not think, therefore, that there was any such use or appropriation of the building, at the time of its destruction by fire, as will prevent a recovery upon this policy. These views cover the propositions presented in the several prayers offered, and it results from them, that the Court below properly rejected the prayers of the defendant, and granted the one offered by the plaintiffs.

*Judgment affirmed.*