[*January Term,* 1872.]

CHARLES E. MATTHEWS AND JOHN MARSHALL *v.* THE QUEEN CITY INSURANCE COMPANY.

Where a policy of insurance was issued to several persons, who were the owners of a building occupied as a planing and saw mill, and the stock and machinery, under the name of Marshall & Co., but it afterward appeared that the owners were not doing business under that name, and the insurer being informed of the mistake, indorsed upon the policy the words, "loss if any, payable to Charles E. Matthews and John Marshall:"

*Held,* that on the happening of a loss, Charles E. Matthews and John Marshall may maintain the action for the benefit of the said owners of the property insured.

Where, in a policy, certain trades are enumerated as "specially hazardous," and the policy stipulates that if the building, or any part thereof, should thereafter be appropriated to any use or business denominated "hazardous, extra hazardous, or specially hazardous," in the conditions enumerated in the policy, . . unless agreed to by the insurer and indorsed on the policy, the policy shall cease and be of no effect:

*Held,* that the use of a part of the building for another of the trades enumerated as specially hazardous in the policy, without the assent of the insurer, avoided the policy, whether it increased the risk or not.

THIS case was reserved to General Term on a motion for a new trial. The suit was upon a policy of insurance. The loss happened on the 8th of April, 1868.

The policy was to "insure Marshall & Co., in $2,500, for one year, against loss or damage by fire, on their two-story brick building, with plastic slate roof, standing detached, occupied by the assured as a planing and saw mill, situated

on Covington avenue, west of Russell street, in Covington, Ky.; also, in $1,200 on their stock, engine, boiler, belting, shafting, tools, machinery, and fixtures contained in said building. A water-tank to be kept filled with water, and a watchman on the premises. Privilege of other insurance. Loss, if any, payable to Charles E. Matthews and John Marshall."

*Matthews, Ramsey & Maethews*, for plaintiffs.

*P. Mallon* and *Hoadly & Johnson*, for defendant.

MINER, J. Three grounds are urged by the defendant for a new trial:

1. That the plaintiffs had no insurable interest.

2. That after the policy was issued, insuring the plaintiffs on a building " occupied as a planing and saw mill," they leased a part of the premises to be used as a carpenter shop, a specially hazardous business, without permission.

3. That the warranty that a watchman was kept on the premises was broken; and that the judge, in his charge, did not give the defendant the benefit of it.

This case was argued in this court some time since, before Judges Storer, Taft, and Hagans, and upon much consideration, as we are advised, a majority of the court, as then constituted, were of opinion that a new trial should be granted for errors of law in the charge of the judge before whom the case was tried in special session; and an opinion to that effect was prepared by Judge Taft. That opinion we have seen and examined, and as we have, upon consideration and an examination of the authorities cited by counsel, arrived at the same conclusions, in respect to the first two propositions considered in said opinion, we adopt and present so much of it as our decision. Judge Taft says:

" As to the first point, there does appear to be a good deal of looseness in the statement of the title of the property. But we are satisfied that the parties had an insurable interest, either in their own right, or as trustees for others, of

which the defendants were aware; and the loss being made payable to the plaintiffs, we do not find it necessary to stop the suit for want of insurable interest.

"There does not appear to have been any fraud or concealment in regard to the title, or misrepresentation, and if there was a mistake, it was made by the agent of the company. To sustain the defense on this ground, would be yielding to a mere technicality, which we do not feel bound to do, under the circumstances proven in this case.

"As to the second defense, the judge at Special Term charged the jury, that the use and occupation of a part of the premises, by the consent of the insured, as a carpenter's shop, with the use of the power furnished by plaintiffs' engine, does not affect the right of the plaintiffs to recover, unless by such use and occupation the risk taken by the insurer was thereby increased.

"This defense presents a difficulty, upon which different courts have held different opinions.

"By the classification of hazards appended to the policy planing mills, saw mills, and carpenter shops, respectively, fall under the denomination of risks known as '*specially hazardous.*'

"It was agreed in the policy, 'that in case the building or any part thereof, should thereafter be appropriated, applied, or used, to or for, the purpose of carrying on, or exercising therein, any trade, business, or avocation named, or any business whatever in any of the articles denominated *hazardous, extra hazardous,* or *specially hazardous,* in the conditions annexed to this policy, named,' 'unless herein otherwise specially provided for, or hereafter agreed to by said company, and indorsed upon this policy, then, and from thenceforth, so long as the same shall be so appropriated, applied, or used, these presents shall cease, and be of no force or effect.'

"The planing and saw mill, which were expressly insured by the policy, falling within the same class of hazards with the carpenter shop, for which the second story of the build-

ing was leased and used, without permission, the question is, whether such use was a violation of the conditions. A condition in the policy must be kept. The natural construction of the conditions requires, that these special hazards should, in many cases, be specially provided for in the body of the policy, or indorsed thereon, and the fact that the policy was made to cover one specially hazardous trade, would not relieve the insured from the necessity of having a special agreement indorsed of the privilege of using any part of the premises for another specially hazardous purpose.

"Such was the ruling of the Supreme Judicial Court of Massachusetts, in the case of *Lee* v. *Howard Fire Ins. Co.*, 3 Gray, 592–594, where the point involved in this case was decided in favor of the insurer; the court holding, upon a condition precisely like that in this policy, 'that the use of part of the premises for a trade or business, specified in the memorandum of special rates, and not mentioned in the policy, nor indorsed thereon, avoided the policy, although the trades disclosed in the policy were also special hazards, and that parol evidence was inadmissible to show that the use, not disclosed, did not increase the risk.'

"The insurance in that case was upon 'a chair shop, tub and pail factory, saw mill and store-houses, and blacksmith shop,' and the item not mentioned in the policy, was 'a grist mill.' But they all fell under the same classification of risks in the policy. The court in that case say, Bigelow, J.: 'It is conceded that the premises insured, in addition to the purposes specified in the policy, were at the time of the fire, appropriated to carrying on a grist mill. This was a distinct use of one of the buildings insured, not assented to by the defendants, for an occupation included in the classes of hazards, annexed to the policy, as a "special hazard." It was, therefore, a violation of the express stipulation in the policy, and by its terms avoids the contract. Nor does it at all affect the result, that this additional unauthorized use of the premises was for a purpose compre-

hended within the same class of hazards as that which was specified in the policy, and originally covered by the insurance. The manifest purpose of this stipulation was to prevent any use of the premises for an occupation or business included in any of the classes of risks denominated hazardous, extra hazardous, or special, without the express sanction of the company in writing. It was not intended to limit the assured, in the use of his property, to the same *class* of risks as those specified in the policy, and to allow him to change the mode of its occupation, or appropriate the premises to additional uses of the same grade of hazards, at his pleasure. Such is not the import of the language of the policy, nor would such a construction of it be just or reasonable. To prevent the accumulation of hazardous occupations in the same premises, without their assent, was the object which the defendants sought to accomplish by this agreement. Each distinct use of the building insured, for a purpose, or business, of a hazardous nature, might, in the opinion of the insurers, increase the risk by fire.'

" Our own court, in the case of the *Merchants and Manufacturers Insurance Co.* v. *Washington Mutual Insurance Co.*, has acted upon the same principle.

" The insurance in that case was upon a steam flouring mill. A kiln-drying corn-meal apparatus was introduced into the premises. Among the trades denominated hazardous in the conditions of the insurance were, 'grist mills and other mills, manufactories, or mechanical operations requiring fire heat.' Judge Gholson says (1 Handy, 185), in delivering his opinion in this case: 'The list of hazardous trades, mentioned in the second of the conditions annexed to the policy, embraces nearly every description of manufactories, and probably all in which steam power is used.' There is no doubt that the steam flouring mill fell within that class of risks, as well as the kiln-drying corn-meal apparatus, for which latter there was no express provision in the policy. And yet, it was held, that unless the kiln-dry-

ing corn-meal apparatus was covered as a usual part, or incident, of a steam flouring mill, it avoided the policy.

"On this point the Superior Court of Cincinnati agreed with the Supreme Court of Ohio, in its opinion, reversing the judgment of this court in the same case; both courts holding that, if the kiln-drying apparatus was not a usual part or incident of a steam flouring mill, it would avoid the policy, though both belong to the same class of risks. 5 Ohio St. 450.

"See also opinion of Judge Storer in General Term, 1 Handy, 423, 426, 429, 431, in the same case.

"On page 423, Judge Storer particularly notices the fact that, 'The risk taken by the defendants was included in the very conditions set forth in the plea. It was of the class denominated hazardous, and it does not appear that the addition of the kiln-drying mill rendered the risk more hazardous or could have increased the premium.' And yet the opinion proceeds, throughout, upon the hypothesis, that whether the kiln-drying mill rendered the risk more hazardous or not, it was fatal to the plaintiffs, unless it could be shown to be a usual 'part of or incident to' a steam flouring mill. And the evidence offered by the defendants to show that the risk was increased by the kiln-drying apparatus was excluded, and the ruling of the judge at the trial excluding it was sustained by this court in General Term. But the Supreme Court in its opinion, when the case was decided in that court on error, was particularly careful not to leave the question in doubt, by reciting the conditions and classifications of hazards, and then holding, 'That if the use of a corn-meal mill, in connection with the kiln for drying corn or meal, was not *a known* or *usual incident,* or an appropriate part of the ordinary business of a steam flouring mill, the introduction of such a business into this flouring mill was a breach in the condition in the policy, and rendered it inoperative.'

"In view of these decisions of our own courts, we do not feel at liberty to adopt the reasoning of the Court of Appeals

of New York, in the case of *Smith* v. *The Mechanics and Traders Insurance Co.*, 32 N. Y. 399.

"Admitting that conditions in a policy are to be literally complied with, the court, in that case, went beyond any previous case in construing them against the insurer, for whose benefit they were inserted. Referring to the doctrine that the term 'occupied,' for any reasonable purpose in the description of the subject of insurance, does not amount to a warranty that the premises shall continue to be so occupied, which doctrine had before been regarded as applying to non-hazardous property, the court in that case applied it to a case where a hazardous trade was introduced into the premises, provided there was no additional increase of risk; and apparently not regarding the expressions of the policy, that if any such trade should be introduced without the written sanction of the insurer, the policy should be suspended while the premises were so used. It may be that companies ought not to be permitted to insert such a condition in the policy. It is difficult, however, to find any other construction of the terms used than that, whenever a hazardous trade is permitted in the insured premises, it shall be with the knowledge and consent of the company, or the company shall not be bound for the risk while the premises are so used. If the risk was not actually increased by the carpenter shop, the condition seems to work a hardship upon the insured, who has paid his premium, and lost his property, without having increased the risk. The principal ground of complaint, on the part of insurers, in regard to the tendency to construe away their conditions, is that it leaves the questions arising upon them more in the discretion of juries than insurance companies naturally desire."

We hold, as did the majority of the court as constituted when the foregoing opinion was made, that the judge at Special Tem erred in his instructions upon this point; and upon this ground we award a new trial.

We have not very fully considered the last error, which, it is claimed, the judge at Special Term committed in his ruling

upon the warranty in the policy, that a "watchman was to be kept on the premises."

Some of us, as at present advised, have doubts as to whether this warranty was kept by the assured; but as the question will probably be resolved by the testimony at the next trial, and inasmuch as we have awarded a new trial on other grounds, we have not thought it incumbent on us to decide this point.