JAMES C. WHITNEY, RESPONDENT, *v.* THE BLACK RIVER INSURANCE COMPANY, APPELLANT.

*Policy of insurance — increase of risk — "Vacant and unoccupied"— meaning of — intention of insured.*

In an action upon a policy of insurance, the company defended on the ground that, after the issuing of the policy, the premises, a saw-mill, had been so used as to increase the risk, by keeping and running a planing machine therein. It appeared upon the trial that the planing machine was in the mill prior to and at the time of issuing the policy, and that no attempt was made to conceal the same. *Held*, that, as the defendant did not set up false representations or a breach of warranty as a defense, but simply that the risk has become greater than at the time of the issuing of the policy, that the defense was properly overruled.

The words "vacant and unoccupied," as used in policies of insurance, must be construed with reference to the kind of structure or building on the premises.

*Semble*, that to render a saw-mill vacant and unoccupied, there must be an entire abandonment of it by the owner.

Although in most cases the question of the intent of the owner is immaterial, yet, in the case of a saw-mill, it is admissible as bearing upon the question of abandonment.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

This action was brought to recover the amount of a policy of insurance, issued upon a saw-mill belonging to the plaintiff.

The action was defended on the ground of a fraudulent over-valuation of the property, and on the further ground that it was forfeited by a violation of a provision of the policy, to the effect that, if " the aforementioned premises shall be occupied or used so as to increase the risk, or become vacant and unoccupied," then the policy should be void.

*James F. Starbuck,* for the appellant.   The defendant, by the covenant for occupation, secured the right to have the property continue to be occupied as it was when the policy was issued, or at least substantially in the way such property is usually occupied. (*Keith* v. *The Q. Fire Ins. Co.,* 10 Allen, 228; *Paine* v. *Agrl. Ins. Co.,* 5 N. Y. S. C., 619; *Harrison* v. *City Fire Ins. Co.,* 9 Allen, 231; 15 Wis., 138.)   The policy contained a provision to the effect that, if the premises should be used so as to increase the risk, or the risk be increased without consent, the policy should be void.   The mill did contain a planer, and the defendant did not know it; such planer did increase the risk, and this being so, the policy was void. (*Webber* v. *E. R. Co.,* 2 Met., 147; *Merbry* v. *M. Ins. Co.,* 5 Gray, 541; *Lyman* v. *State Ins. Co.,* 14 Allen, 329.)   It is not necessary that the use of the planer should have caused the fire.   It is enough that it was there, and that the risk was thereby increased. (May on Insurance, §§ 582, 223, 224; *Merriam* v. *M. Ins. Co.,* 19 Pick., 162; *Wood* v. *N. Ins. Co.,* 3 Seld., 530.)   The fact that the planer was in the mill and in use prior to fire, does not affect the question of the forfeiture. (*Mead* v. *Northumberland Ins. Co.,* 3 Seld., 530; *Wall* v. *E. R. M. Ins. Co.,* id., 370; *Hobby* v. *Dacey,* 17 Barb., 111; *Smith* v. *Her. M. and T. F. Ins. Co.,* 32 N. Y., 399; *Jennings* v. *Ch. M. Ins. Co.,* 2 Den., 751; Alb. Law Jour., vol. 8, p. 308; *Appleby* v. *Foreman's Hernd. Ins. Co.,* 45 Barb., 459; *Glen* v. *Lewis,* Wels., Hurl. & Gord., Exch., 607; *Rice* v. *Flower,* 1 Gray [Mass.], 426; *Lockner* v. *Home M. Ins. Co.,* 4 Qhio, 285; *Fire Association* v. *Williamson,* 26 Penn., 196; *Howe* v. *Baltimore Eq. Ins. Co.,* 16 Ind., 377; *Curry* v. *Commonwealth Ins. Co.,* 10 Pick., 535; *Stetson* v. *Mass. M. Ins. Co.,* 4 Mass., 330; *Johnes Mfg. Co.* v. *Mfg. M. Ins. Co.,* 8 Conn., 82; *Schenck* v. *Union M. Ins. Co.,* 4 Zab. [N. J.], 447; *Parmler* v. *Hoffman F. Ins. Co.,* 54 N. Y., 193; *Celt* v. *Phœnix Ins. Co.,* id., 595.)

*Leslie W. Russell,* for the respondent.   The courts have decided that the mass of printed conditions in printed policies of insurance, are to be strictly construed against the underwriter. (*McMasters* v. *Presdt., etc., Ins. Co. N. Am.,* opinion of the

court, 55 N. Y., 232; *Reynolds* v. *Commerce Ins. Co.*, 47 id., 604; *Rowley* v. *Empire Ins. Co.*, 36 id., 550; *Rann* v. *Home Ins. Co.*, 59 id., 388.) And the breach of any condition must be set up affirmatively, and the defense strictly limited to those allegations. (*Williams* v. *Mechanics and Traders' Ins. Co.*, 54 N. Y., 577.) And admission of evidence under it, not pleaded, is error. (*Dimon* v. *Dunn*, 15 N. Y., 498; *Wright* v. *Delafield*, 25 id., 266.) In the absence of warranty the name is merely a description, and used for a description; it is no guarantee that the building is and will not be used for other purposes. (*Burr* v. *Broadway Ins. Co.*, 16 N. Y., 267; *Yonkers, etc., Ins. Co.* v. *Hoffman Ins. Co.*, 6 Rob., 316; *Smith* v. *Mechanics and Traders' Ins. Co.*, 32 N. Y., 399; 2 Pars. on Con., 325.) And there is no such thing as a constructive warranty. It must be expressed. (*Jeff. Co. Ins. Co.* v. *Cotheal*, 7 Wend., 73; Philips on Ins., 112.) Mere concealment, without actual fraud, cannot affect policy. (*Gates* v. *Mad. Co. Ins. Co.*, 5 N. Y., 469.) Even if there had been ambiguity in the name, yet the presumed knowledge of the agent, and the light in which the plaintiff believed the agent acted, is competent evidence to lead the court aright. (*Reynolds* v. *Comm. Ins. Co.*, *supra*; *Benedict* v. *Ocean Ins. Co.*, 1 Daly, 8; affirmed, 31 N. Y., 389; *Mayer* v. *Exch. Ins. Co.*, 3 Abb. Ct. App. Dec., 269; *Leslie* v. *Knick. Ins. Co.*, 5 N. Y. S. C., 193.) Even if any part of the description be false, if enough remains to point out the place it is sufficient. (*Bryce* v. *Lorillard Ins. Co.*, 55 N. Y., 240.) And even had there been a warranty that the building had been a, saw-mill alone, presumed knowledge of the defendant was sufficient answer. (*Bidwell* v. *N. W. Ins. Co.*, 24 N. Y., 302.) These premises certainly could not have become vacant and unoccupied until abandoned for all use, and the time cannot be defined when all of its uses ceased. (May on Ins., 668.) Even in the case of a dwelling-house, a man need not be on the premises all the time. (*Sherman* v. *Niagara Ins. Co.*, 46 N. Y., 533.) He may have a reasonable time for repairs. (2 Pars. on Con., 329.)

LEARNED, P. J.:

Three defenses are set up in the answer: non-occupation of the mill; increase of risk, after the issue of the policy, by using a

planing mill; excessive valuation at the time of obtaining the policy.

Of the last there seems to be no evidence. The testimony as to the price paid for the premises might have aided the referee in determining the value; but there is no finding on this point.

The clause in the policy on which the second defense depends is: "If the above mentioned premises shall be occupied or used so as to increase the risk." The policy was issued May 28, 1872. There had been a planing machine on the premises, connected with the saw-mill, before December, 1871, and it was there when the policy was issued. There was no change afterwards. The planing machine had been used before. Goodno, the defendant's agent, had been on the premises before the policy was issued; he had a general knowledge of insurable property at Morley (where these premises were), including the mill. There was no concealment of the machine.

The defense set up is not false representation, or a warranty as to the mode of use of the building. It is, that after the policy was obtained, the risk was increased. This must mean that, by some act of the plaintiff, the risk became greater than it was at the time of insurance. Several cases are cited by the defendants showing that where there is a warranty as to the present or the future use of the premises, and such warranty is broken, the insured cannot recover. (*Mead* v. *North. Ins. Co.*, 7 N. Y., 530; *Wall* v. *E. R. M. Ins. Co.*, 7 id., 370.) In a later case (*Smith* v. *H. M. and T. F. Ins. Co.*, 32 N. Y., 399), it was held that the description of the premises was a warranty of their present, not of their future use. But it is not necessary to consider what the warranty is. The defense is not made to depend upon it, but upon an actual increase of the existing risk.

If the use of the planer was a breach of the warranty contained in the description of the premises then, as was said in the case last cited, the warranty would have been broken *in presenti*. But the defendants do not claim this; they assert only that, by a subsequent act, the risk was increased, contrary to the condition of the policy. The defendants evidently appreciated this, because they asked leave to set up an amended answer containing allegations of

fraudulent misrepresentation as to the condition of the property in respect to this planer; and leave was refused.

The third defense is, that the premises were " vacant and unoccupied," from April 1 to May 16, 1873.

The referee finds that the mill had been used as a custom mill and to saw the owner's lumber; that in the winter of 1873 one man did most of the sawing; that the gang broke down in February, 1873; that some work was done by the English gate until April seventh, when a portion of the belts were taken to the plaintiff's store, and no more sawing was done until the last days of April, when the belts were taken back and two to four days of sawing was done; that no more use was made of saws or machinery till the fire; that the plaintiff's men were occasionally at work about the mill handling lumber, and a few sales of lumber were made from the mill after April seventh. At the time of the fire there were about 100 logs remaining at the mill yard, and about 160 standard logs about 100 rods above the mill, intended to be cut at the mill. The referee finds that the premises did not become vacant and unoccupied.

The words " vacant and unoccupied " must be construed with reference to the kind of structure or building on the premises. " Occupation of a dwelling-house is living in it." (*Paine* v. *Ag. Ins. Co.*, 5 N. Y. S. C. R., 619.) But people do not live in a saw-mill. In *Keith* v. *Quincy Fire Ins. Co.* (10 Allen, 231), the plaintiff closed up a trip-hammer shop, the property insured, and it was held to be vacant. A shop of that kind, ordinarily, has people working in it on every working day. A saw-mill is different. If a custom mill it must depend on the logs brought to it for business. In any case, when driven by water power, it must rely on the supply of water, and must be idle when that fails. Nor does it appear to me that the intent of the owner is of any use in determining the question of mere vacancy of the building. A house is none the less vacant because the owner intends to occupy it again. And, in like manner, if a saw-mill can properly be said to be vacant and unoccupied in any case, then, if for want of water it lies idle a week, it is vacant, although the owner is ready to resume work as soon as he can. I cannot think that such should be taken to have been the meaning of the parties.

Of course the policy is the contract between the parties. But still, in construing this contract, it is just to notice that this condition, on which the defendants rely, is contained in those two or more, finely (almost microscopically) printed pages which follow the written part of the insurance policies, and which, probably, no insured person ever reads. It is especially necessary, therefore, that the written part should control the printed; and it seems to be hardly possible to apply the words, " vacant and unoccupied," with the meaning which they ordinarily have, to a saw-mill like this, driven by water power. If a few days of non-user of the saw-mill are to be construed to avoid the policy, that construction seems inconsistent with the contingencies of use, which must have been contemplated by the parties who had knowledge of the nature of the property.

Perhaps there might be such entire abandonment of the mill as would be, in respect to such property, equivalent to the closing and leaving unoccupied of a dwelling-house. But I think that such abandonment was not proved; that the referee correctly decided that this defense was not made out.

The defendants, while examining one of their own witnesses, offered to show that the plaintiff had endeavored to prevent him from testifying. The plaintiff objected, but subsequently this testimony was admitted, so that the defendants are not injured.

Evidence of arrears due from the property, to maintain the dam, was excluded. This was not error. A lien on the property did not tend to show an overvaluation.

The defendants insist that proofs of an arrangement made by the plaintiff for logs to stock the mill was improperly received to show absence of intent to abandon. They say that there is no question of intent, but only a question of practical vacancy and non-occupation. I think, as above stated, that this view is correct whenever the words " vacant and unoccupied " can accurately be applied as to a house or shop. But in regard to such property as a saw-mill, as already stated, if these words can be applied at all, it seems to me they can only be used as expressing an abandonment; and to this the intent of the owner is material.

I find no exceptions in regard to the evidence requiring a reversal of the judgment.

The judgment should be affirmed, with costs.

Present — LEARNED, P. J., BOOKES and BOARDMAN, JJ.

Judgment affirmed, with costs.